UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CURTIS MARTIN,

        Petitioner,               Case No. 2:08-cv-60

v.                                           Honorable Robert Holmes Bell

JERI-ANN SHERRY,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 2-4 years, imposed by the Schoolcraft County Circuit Court on May 4, 2006. Petitioner pleaded guilty to three counts of resisting and opposing a police officer and being a fourth habitual offender. In his *pro se* petition, Petitioner raises four grounds for relief, as follows:

        I. Sentence Invalid

        II. Due Process

        III. Effective assistance of counsel

        IV. Conviction obtained unlawfully

Respondent has filed an answer to the petition (docket #12) stating that petitioner's claims should be denied because they are noncognizable state law claims which have no merit. Upon review and applying the AEDPA standards, the court finds that Petitioner's claims are without merit.

The state prosecution arose from the petitioner's arrest on January 15, 2006. Police were called to Main Street Pizza where Petitioner was intoxicated and being disorderly. Petitioner resisted arrest by Manistique Police Officers Kevin Smith and Eric Willour. Petitioner was taken to Schoolcraft County Jail, where he resisted Deputies Donald Bellville and Regan Cole (Arraignment p 3-4). On May 4. 2006, Petitioner pleaded guilty to Count II resisting and opposing Kevin Smith, Count III resisting and opposing Eric Willour, and count VI resisting and opposing Regan Cole. As part of his plea agreement, Petitioner also admitted to being a fourth habitual offender. (Plea, p. 2.)

On November 16, 2006, Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, asserting that his sentence was disproportionate, that his counsel objected to information in the presentence report and that the issue was not resolved by the trial court, and that the trial court did not articulate the proper reasons for the sentence. On December 19, 2006, the Michigan Court of Appeals denied petitioner leave to appeal for "lack of merit in the grounds presented." (*See People v. Martin*, Michigan Court of Appeals No. 274378.)

In February of 2007, Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues raised in the Michigan Court of Appeals. The Michigan Supreme Court denied Petitioner's application for leave to appeal for lack of merit on May 30, 2007. (*See People v. Martin*, Michigan Supreme Court No. 133143.) In January of 2008, Petitioner filed a pro per motion for relief from judgment, arguing that he had not been timely served with notice that he was being charged as a fourth felony offender pursuant to Michigan law. As of the date Petitioner filed the instant habeas corpus action, the trial court had not ruled on the motion for relief from judgment.

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (Oct. 9, 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the

petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the

strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

Petitioner first claims that the Prosecutor didn't timely file a fourth habitual offender notice. A review of the transcript for Petitioner's arraignment reveals that Petitioner was informed by Mr. Hollenbeck that he was being charged as a habitual offender having at least three prior felonies. (Arraignment p. 4). During the plea hearing, Petitioner stated that he understood he was being charged with three counts of disorderly conduct and a habitual offender enhancement. (Plea p. 5.) Petitioner also admitted to receiving notice of the habitual fourth offense and did not dispute

any of the information. (Plea p 7.) Therefore, Petitioner's claim regarding notice of the habitual offender offense lacks merit.

Moreover, this issue appears to be unexhausted as Petitioner failed to allow the state courts an opportunity to pass on claim. This claim was only raised in Petitioner's motion for relief from judgment, which continued to be pending as of the date on which Petitioner filed his habeas corpus action. Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

In Petitioner's second claim for habeas corpus relief, he asserts that his sentence was based on incomplete and inaccurate information and that the court did not acknowledge the mitigating effect of his alcoholism, which he offered during sentencing. Petitioner claims that the court failed to acknowledge any of the evidence offered by him on his own behalf at the time of sentencing. The court notes that during the plea hearing, Petitioner admitted to losing self control

while at the jail, as well as to the knowledge that Deputy Cole was a law enforcement officer. (Plea, p. 11). During sentencing, Petitioner objected to the fact that the presentence report referred to him as a daily consumer of alcohol, but he subsequently addressed the court before sentence was imposed and admitted to being an alcoholic. (Sentencing, pp. 16, 20-24.)

In his delayed application for leave to appeal in the Michigan Court of Appeals, Petitioner complained that the sentencing court relied on incomplete information regarding his alcoholism. Petitioner stated that the evidence should have been used to mitigate his sentence, but instead the court used the information to increase the sentence. (Petitioner's November 2006 application for leave to appeal, p. 5.)

As noted by Respondent, Petitioner admitted that the presentence report was accurate in terms of Petitioner's drinking habit. As a result of Petitioner's drinking problem, the court recommended alcohol treatment be offered to him while in prison. (Sentencing, p. 25.) The record shows that there was no misinformation relied on by the trial court in sentencing Petitioner. Therefore, the court will deny Petitioner's second claim for habeas corpus relief.

In Petitioner's fourth claim, he asserts that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. Petitioner argues that his sentence violated the Eighth Amendment by being disproportionate to the crime. In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court stated that the law regarding proportionality was not clearly established for purposes of a habeas analysis under § 2254(d)(1) except that a gross proportionality principle is applicable to a sentence for a term of years. *Id*. at 71. However, "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* The Supreme Court stated:

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. In *Solem*[1] (the case upon which Andrade relies most heavily), we stated: "it is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not." And in *Harmelin*[2], both Justice KENNEDY and Justice SCALIA repeatedly emphasized this lack of clarity: that "*Solem* was scarcely the expression of clear . . . constitutional law," that in "adher[ing] to the narrow proportionality principle . . . our proportionality decisions have not been clear or consistent in all respects," that we "lack clear objective standards to distinguish between sentences for different terms of years," and that the "precise contours" of the proportionality principle "are unclear."
>
> Thus, in this case, the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme' case.

*Id.* at 72-73 (citations omitted). The Supreme Court further noted that state legislatures have "broad discretion to fashion sentences that fit within the scope of proportionality principle - - the 'precise contours' of which 'are unclear.'" *Id.* at 76.

Moreover, the Sixth Circuit has concluded that a sentence that falls within the maximum penalty authorized by statute "generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). In this case, the maximum possible sentence that Petitioner could have received was 15 years. (Sentencing, p. 4.) Petitioner was sentenced to 2 to 4 years. Petitioner's sentence did not violate the Eighth Amendment.

---

[1] *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001 (1983).

[2] *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680 (1991).

- 8 -

In Petitioner's third claim, he asserts that trial and appellate counsel were ineffective in assisting him. Petitioner alleges that both failed to address the issue of the untimeliness of notice of the fourth habitual charge. However, during the plea hearing, the court addressed the fourth habitual offender notice and whether it had been received. "You also have been given notice, Mr. Martin, of habitual offender, fourth offense notice. And that would enhance the penalties, and the maximum with the enhancement would be–" (Plea, p. 5, line 3-6) The court also asked Petitioner if he had received notice of the habitual fourth offense charge. "And you've received notice of your–of the habitual fourth offense notice?" Petitioner responded that he had and the court asked if Petitioner wanted to dispute any of the alleged information. Petitioner stated, "No, I don't my record states itself" (Plea p. 7, lines 4-11).

In order to prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495

> U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996). Because it is clear from the record that Plaintiff received notice of the fourth habitual offender charge, his counsel were not ineffective in failing to raise this issue.

For the foregoing reasons, Petitioner's habeas corpus petition will be denied to lack of merit.

In addition, the court will deny a certificate of appealability as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. Aug. 27, 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong. For the reasons set forth above, it is clear that Petitioner has failed to show that his conviction and sentence violated his rights under federal law. Therefore, the Court will deny Petitioner a certificate of appealability.


Dated: March 31, 2011                             /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE